THE STATE, THE ELIZABETHTOWN WATER COMPANY ET AL., PROSECUTORS, v. LEWIS H. WADE, COLLECTOR OF THE TOWNSHIP OF UNION, IN THE COUNTY OF UNION.

The acts of May 25th, 1894 (*Pamph. L., p.* 506), and of March 22d, 1895 (*Pamph. L., p.* 472), provide that where a number of school districts are consolidated, an assessment equal to one-fifth of the value of the school property in each of the old districts shall be levied upon all the taxpayers of the consolidated district, and there shall be remitted to the taxpayers of each school district as it existed on the 30th day of June, 1894, one-fifth of the appraised value of the school property belonging to said district, and yearly thereafter one-fifth shall be so assessed and remitted until the whole appraised value is remitted. *Held*, that this legislation is unconstitutional. It provides for no public necessity or exigency; the tax is not to be appropriated to the expenses of government; its sole end and design is to benefit one class of citizens at the expense of another.

On *certiorari*.

Argued at February Term, 1896, before Justices DEPUE, VAN SYCKEL and GUMMERE.

For the prosecutors, *Frank Bergen* and *Cross & Noe.*

For the defendant, *Nicholas C. J. English.*

The opinion of the court was delivered by

VAN SYCKEL, J. This case involves the question of the constitutionality of section 27 of the act of May 25th, 1894 (*Pamph. L., p.* 506), entitled "An act to amend an act entitled 'An act to establish a system of public instruction,'" as amended by a supplement thereto, approved March 22d, 1895. *Pamph. L., p.* 472; *Gen. Stat., p.* 3066.

Section 13 of the act of 1894 is as follows: "That the several school districts in each township shall be consolidated into one school district, and that the property, real and personal, of said several school districts shall become and be the property of the consolidated district in its corporate capacity, and shall be held in its corporate name, and the several obligations and debts of said districts, whether secured by bonds or otherwise, shall be assumed by and shall become the obligations and debts of said consolidated district."

Section 27 provides "that the school-houses, lands, apparatus and other property owned by the school districts hereby abolished, shall, immediately after the passage of this act, be appraised by the assessors of the several townships; in making said appraisements, the amount of debt incurred by any district for the purchase of lands, apparatus and other property, or for the erection of a school-house or schoolhouses, which debt is unpaid at the time of making such appraisement, shall be deducted from the appraised value of such property; one copy of said appraisement shall be filed with the county superintendent, one copy with the district clerk of the consolidated district, and one copy with the township collector, and at each assessment for special school tax thereafter (until the whole amount is remitted), there shall be remitted to the taxpayers of each of said districts one-tenth of the said appraised value of the property of the school district in which such taxpayers reside or own property; pro-

vided, that in case any such district is situated in two or more townships, the assessors of said townships shall jointly make said appraisement, and shall determine the part thereof belonging to each of said townships, and each township shall remit to the taxpayers in its part of such district the part so determined, in the same manner as in case of districts wholly within a single township; and provided further, that in case any such district is situated in two or more boroughs, or partly in a borough and partly in a township, said appraisement shall be made by the several borough assessors, or by the borough and township assessors (as the case may be), in the manner aforesaid."

The first section of the act of 1895 provides "that each assessor shall include in the next assessment made by him one-fifth of the total value of all the school property situate within his taxing district, as appraised as now provided by law, and there shall be remitted to the taxpayers of each school district, as said district existed on the 30th day of June last, one-fifth of the appraised value of the school property belonging to said school district, and yearly thereafter one-fifth of the value of said property so appraised as aforesaid shall be assessed and remitted until the total appraised value of said property has been remitted; provided, that in case a district lay in two or more townships or boroughs, or in a township and borough, the amount ascertained as due that portion of the district lying in the township or borough which does not contain the school-house, shall be paid over by the collector of the township or borough in which said property is situated, to the collector of the township or borough in which is situated that portion of the district which does not contain the school-house, and the moneys thus paid over shall be used for the repair or improvement of the school property of said township or borough."

In this section and also in section 3 of the act of 1895, as printed in the pamphlet laws, the word "thirteenth" is by mistake erroneously substituted for the word "thirtieth," as appears by the act filed in the office of the secretary of state.

" The theory of taxation is that it is levied for public purposes; that it is an attribute essential to the exercise of government, without which it would be powerless to discharge its functions, and for that reason it is held to be inherent. It is the public use for it which marks it as a tax. Where no public end is subserved, the power cannot be called into action." *Baldwin* v. *Fuller,* 10 *Vroom* 576.

The provision made by this legislation is that an assessment equal to one-fifth of the value of the school property in each of the old districts shall be levied upon all the taxpayers of the consolidated district, and there shall be remitted to the taxpayers of each school district as it existed on the 30th day of June, 1894, one-fifth of the appraised value of the school property belonging to said district, and yearly thereafter one-fifth shall be so assessed and remitted until the whole appraised value is remitted.

Those who were taxpayers in the old district on the 30th of June, 1894, can alone participate in the remittance from year to year.

Persons who were taxpayers in such district on the 30th day of June, 1894, would be entitled to the remittance in each of the five years, although they had become such taxpayers after all the school property had been paid for by taxation of the district, and they had never contributed to the purchase of the school property.

The effect of this legislation is to assess upon all the taxpayers of the consolidated district a tax equal to the value of all the school property in the several districts composing it at the time of the consolidation, and to give back to the taxpayers in each of the old districts a sum equal to the value of the school property in their district.

So far as this tax is remitted, it is imposed for private use, not for any public use; no part of it goes to discharge a public debt or to promote a public purpose, and no part of it finds its way into the public treasury.

In the most favorable view that can be taken of the law, it is levied expressly for the benefit of a selected class of per-

sons, to reimburse them for moneys heretofore paid by them in satisfaction of taxes legally laid upon them and appropriated to public uses.

If taxes are illegally imposed, the taxing district may unquestionably be authorized to make an assessment for the purpose of restoring to the individual taxpayer the amount illegally exacted from him ; but when taxes have been in all respects legally levied and collected and appropriated to the public purposes for which they were assessed, there is no right on the part of the taxpayer to have them refunded at the expense of those who had no voice in their imposition or expenditure, nor is there any duty on the part of the government to make restitution.

No right can be based upon the payment of taxes except those rights which the taxpayer enjoys in common with all persons residing in the political district in which the burden is laid.

The effect of this legislation is to take by taxation the property of one part of the taxpayers, in ease of another part, for purposes to which both are alike legally liable to contribute.

It cannot be justified on the theory that the taxpayers who receive the remittance are only receiving compensation for property in which they have a personal interest. Such taxpayers have no right of property whatever in the school lands and buildings to the purchase of which taxes paid by them have been applied.

The school property is public property, the property of the incorporated district, and not of the taxpayers residing within it.

While such persons live within the district they enjoy in common with others its superior advantages, but they have no greater right in such property than a person who moves into the district after all liabilities incurred for the purchase of school property have been paid.

If this legislative scheme can be upheld, there is no limitation upon the power to provide for an equalization of the public burdens, taking into account previous assessments without regard to lapse of time.

· By this device of assessment and remittance the inhabitants of a district annexed to a city might, at the will of the legislature, be burdened in excess of the other taxpayers, until a supposed equality was established between the old and new citizens, taking into computation the amount of taxes previously paid by the former, and expended for public improvements.

Such an exaction has none of the characteristics of legal taxation; it provides for no public necessity or exigency; it is not to be appropriated to the expenses of government; its sole end and design is to benefit one class of citizens at the expense of another.

" Taxes must be apportioned among those who are to bear the burden upon the rule of uniformity. A tax upon the persons or property of A, B and C individually, whether designated by name or in any other way, which is in excess of an equal apportionment among the persons or property of the class of persons or kind of property subject to the taxation, is, to the extent of such excess, the taking of private property for a public use without compensation." *State* v. *Readington,* 7 *Vroom* 66.

In the case *sub judice* it is the taking of private property for private use.

A present irregularity cannot be established because in times past some taxpayers have contributed by way of taxation more than others to the purchase of school buildings or to other public improvements.

" It is the essential character of the direct object of the tax which must determine its validity." *Lowell* v. *Boston,* 111 *Mass.* 461.

In the case before us there can be no question that its primary and principal object is for private and not for the public benefit.

In this respect it violates not only the spirit of our constitutional provision, but also general fundamental principles.

The effect of the remittance is to cast the tax upon a part only of the political district without regard to the special bene-

fits which may accrue to those upon whom it is made to fall; it must, therefore, be denounced as an illegal exercise of the taxing power.  *Baldwin* v. *Fuller, supra.*

In my judgment, the legislature has transcended its authority in resorting to the power of taxation for the purposes expressed in the enactments under review.

This radical vice existing in the law, it is not necessary to consider whether the act of 1895 is void because it does not set out section 27 of the act of 1894, as altered or amended by the act of 1895.

The assessments should be set aside with costs.